UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY D. WILLIAMS,

                         Plaintiff,

v.                                                  **DECISION AND ORDER**
                                                       11-CV-023S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

      1.      Plaintiff, Anthony D. Williams, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Williams alleges that he has been disabled due to pain from right and left rotator cuff injuries, and back and neck ailments since July 1, 2008.[1] Williams contends that his impairments render him unable to work. He therefore asserts that he is entitled to disability insurance benefits and Social Security Income under the Act.

      2.      Williams protectively filed an application for benefits under Titles II and XVI of the Act on March 15, 2007. The Commissioner of Social Security ("Commissioner") denied that application, and as result, he requested and received an administrative hearing, which was held before ALJ Timothy M. McGuan on May 27, 2009. ALJ McGuan reviewed the record *de novo* and by written decision issued on July 27, 2009, found Williams not disabled. Thereafter, the Appeals Council denied his request for review, prompting Williams to file the current civil action on January 7, 2011, challenging

---

[1]Amended from August 23, 2006.

1

Defendant's final decision.[2]

3.  On June 28, 2011, both the Commissioner and Williams filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 11.) Briefing on the motions concluded on July 25, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, Williams' motion is denied and the Commissioner's is granted.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Ruthisford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

---

[2] The ALJ's July 27, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Williams has not engaged in substantial gainful activity since August 23, 2006 (R. 14);[3] (2) Williams has three severe impairments: "status post bilateral rotator cuff repairs, degenerative disc disease, and mild cervical spine radiculopathy" (id.); (3) Williams does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) Williams retained the residual functional capacity ("RFC") to "lift up to 20 pounds occasionally and 10 pounds frequently and has the following non-exertional limitations: push/pull with the upper extremities up to 20 pounds, can occasionally overhead reach bilaterally and can frequently finger and handle bilaterally" (R. 15) and; (5) considering Williams' age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that he could perform (R. 20). Ultimately, the ALJ concluded that Williams was not under a disability as defined by the Act from August

---

[3]Citations to the underlying administrative record are designated as "R."

26, 2003 through the date of his decision. (R. 21.)

10. Williams raises four challenges to the ALJ's decision. First, Williams argues that the ALJ violated Social Security Ruling ("SSR") 00-4p by relying on the vocational expert's testimony, which, he argues, was not consistent with the Dictionary of Occupational Titles ("DOT"). Second, Williams argues that the ALJ committed reversible error in deciding that 217 jobs regionally and 58,000 jobs nationally are "significant" under the Act. Third, that the ALJ erred in failing to find that his osteoarthritis is a severe impairment and in omitting symptoms of this disorder when assessing his RFC. Finally, he argues that the ALJ violated SSR 96-7p by failing to explain why his testimony was not credible.

11. Williams objects to ALJ McGuan's reliance on vocational expert James Phillips' testimony simply because he referred to DOT code 915.473-014 instead of code 915.473-010 during testimony at the administrative hearing. Phillips was discussing the job of a parking lot attendant and referred to a code – ending in "014" instead of "010" – that does not exist in the DOT. (R. 51.) Williams does not argue that such a mistake prejudiced him, but that this mistake calls into question the accuracy of Philips' entire testimony. But such a *de minimis,* inconsequential mistake hardly renders Phillips' testimony or ALJ McGuan's reliance thereon suspect. Williams did not object to Phillips serving as a vocational expert and he does not point to any other mistakes that could undermine his credibility or expertise.[4] This argument will therefore be dismissed without further consideration.

---

[4] At another point in his testimony Philips stated, "Regionally we have 217,000 [jobs] – oh, I'm sorry, 217." (R. 51.) Williams seizes on this verbal stumble and argues that this also calls into doubt his testimony. Such an argument is at best meritless, if not entirely frivolous.

12. Equally without merit is Williams' contention that ALJ McGaun improperly found that Williams could perform jobs that exist in "significant" numbers.

The second part of the fifth step of the Commissoner's sequential analysis, (outlined above) requires the Commissoner to determine whether the claimant can perform "work which exists in the national economy," meaning "work which exists in *significant* numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f) (emphasis added). The requirement can thus be met if significant jobs are available either locally or nationally. ALJ McGaun found that, based on Phillips' testimony, a parking lot attendant is a job representative of the type that Williams could perform and that there are 217 of those jobs locally and 58,000 nationally.

13. This Court need not determine whether 217 local jobs is sufficiently "significant" because the presence of 58,000 jobs nationally satisfies the Commissioner's burden. Williams does not dispute that 58,000 is a "significant" number; rather he argues that the ALJ failed to identify the "several regions" in which these jobs exist. Without such an identification, he argues, the ALJ's analysis is incomplete, requiring remand or reversal. But Williams cites no case law for this proposition, likely because the purpose of the "several regions" language is not to place a burden on the Commissioner to specifically identify the regions in which the jobs are available, but to ensure that the claimant is not denied benefits because he could perform work that exists only in "isolat[ion]" and "in relatively few locations." 20 C.F.R. §§ 404.1566(b). Here, the ALJ did not find that Williams could only perform a job that is found in relatively few locations; instead, he found that Williams could generally perform light, unskilled work with certain limitations and provided the example of a parking lot attendant – an occupation that is surely found in nearly every

corner of the country – to represent that type of work. Contrary to Williams argument, the ALJ was not required to precisely identify the regions where parking lot attendants work. See, e.g., Carvey v. Astrue, No. 06-CV-0737, 2009 WL 3199215, at *15 (N.D.N.Y. Sept. 30, 2009) (vocational expert's testimony that jobs exist in significant numbers nationally and locally sufficient to meet the Commissioner's burden at step five.) His motion on this ground is therefore denied.

14. Williams next argues that the ALJ erred (1) in failing to categorize his osteoarthritis as a severe impairment and relatedly (2) by omitting symptoms of this disorder when assessing his RFC. However, at this step of the Commissioner's analysis, the claimant has the burden to demonstrate that a limitation is a "severe impairment," which significantly limits his physical or mental ability to do basic work activities. See Callahan, 168 F.3d at 77; 20 C.F.R. § 404.1520. Although, after review of an X-ray, he was diagnosed with osteoarthritis of the cervical spine by Drs. John Leddy and Sam Schimelpfenig, (R. 415-16), nothing in the record suggests that this leads to a significant limitation on his ability to perform basic work activities. Moreover, it is clear that while not listed among the "severe impairments," ALJ McGaun did consider Drs. Leddy and Schimelpfenig's diagnosis. See Chavis v. Astrue, No. 5:07-CV0018 (LEK/VEB), 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010) (noting that even "[wh]ere an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis"). At the hearing, ALJ McGaun specifically broached this subject, asking Williams why he went to see these doctors.[5] (R. 43.) He also considered the diagnosis in his "Findings of Fact and Conclusions of Law," noting that:

---

[5]In response, Williams said only that "they had to do with physical therapy." (R. 43.)

> [t]he claimant had [a] consultation with Dr. Leddy on June 23, 2008, who assessed osteoarthritis of the cervical spine with cervical muscular pain and upper thoracic muscle spasm. The claimant denied any numbness or tingling in his upper extremities. On examination, he had full range of motion of the cervical spine and shoulders with some tenderness, but 5/5 strength. He had no impingement signs and sensation was intact. He was to begin physical therapy.

(R. 18.)

Thus, ALJ McGaun did not omit this diagnosis or its symptoms when considering his RFC. To the contrary, he found that this visit inured in favor of a "not disabled" finding because Williams had "full range of motion," and "5/5 strength," with "sensation intact" and "no signs of impingement." (See id.)

15.   Lastly, Williams argues that ALJ McGaun improperly discredited his credibility. Much, if not all, of Williams' testimony concerned the amount of pain he suffers as a result of his impairments. For example, the ALJ's questioning of Williams begins as follows:

> ALJ: Okay. So why do you believe you've been unable to work since July 1 of this year - - of last year?
> Williams: Because of my pain.
> ALJ: Well what about the pain? Pain is relative. Some people have little pain, some people - -
> Williams: It heightens with my mobility and that - - with the things that I do. It heightens with the things that I do.
> ALJ: Such as?
> Williams: Work

(R. 37.)

16.   Complaints of pain are an important factor to be considered in determining a disability. Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). However, the ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding the pain,] . . . .[which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Id. at 186 (citation omitted).

Here, ALJ McGaun properly employed that discretion. Williams takes issue with the ALJ's statement that "[t]he Administrative Law Judge refers to the claimant's testimony and inconsistencies noted therein when compared to the record." (R. 19.) Williams is correct that a "single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible,'" is insufficient. See SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996). At first blush, it appears that ALJ McGaun has committed such an error. However, a full reading of his decision reveals that the reasons for discrediting Williams' testimony regarding the intensity, persistence, and limiting effects of his pain are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See id.

17.   ALJ McGaun initially notes that Williams testified that he can only sit for 15 or 20 minutes at a time but that "the claimant sat at the hearing without moving for 32 minutes[,]" thus undermining his credibility on this front. (R. 16.)

Second, Williams claimed that he had numbness and tingling in his arms but could not say when it began. (Id.) Further, the ALJ noted that recent medical notes from Dr. Leddy indicate no complaints of numbness or tingling. (Id.)

Third, ALJ McGaun notes that Williams claimed to have "weakness," but that no motor weakness was reveled upon a recent examination on April 6, 2009 (Id.)

Finally, Williams complaints do not align with the substantial, objective medical evidence to the contrary, which was outlined by the ALJ and is summarized below:

- Treatment notes from Erie County Medical Center from September 2007 indicate that Williams was "doing well," and was "fishing" with only "some discomfort." (R. 410)

- Although at the hearing Williams claimed that physical therapy increased his pain, reports from the therapists reveal that the therapy was helping, he was "progressing nicely," and that Williams himself suggested that he needed to make more progress in that regard. However, he was discharged for lack of attendance in 2007. (R. 398.)

- He was consistently deemed, by various physicians and therapists, to have full or active range of motion in his arms, neck, shoulders and back. (R. 333, 398, 400, 407, 415, 418-19, 444, 447)

- Dr. V. Yu, a consultive physician, found that Williams could lift up to 20 pounds occasionally, 10 pounds frequently, and could walk for 6 hours of an 8-hour day. (R. 321.)

- Treatment notes from Dr. Philip Stegemann in March of 2008 indicate that Williams was doing well and "able to work." (R. 407.)

- A physical examination in 2009 showed no changes in his neck or shoulders. (R. 430-31.)

- Although Williams rated his pain as "20/10" at his hearing on May 27, 2009, he rated it as "5/10" just a week before at a May 20, 2009 therapy session. (R. 464.)

18.   Thus, while certain physical problems and accompanying complaints of pain are reported in the physicians' records, substantial evidence supports the ALJ's finding that the intensity and severity of the pain complained of was not entirely credible based on the record as a whole. These reports also served as substantial evidence on which the ALJ was entitled to rely – as he did – in assessing his RFC and ultimately finding that Williams was not disabled under the Act. (See R. 20) ("The Administrative Law Judge gives

significant weight to the opinions of his treating and examining physicians, who reported in 2007, he was doing well; physical therapy records that revealed that his shoulder problems were mostly resolved by October 2007 and Dr. Stegeman [sic] who opined in March 2008 he was doing well and able to work."). (citations omitted).

19. Accordingly, for the reasons stated above and having found that ALJ McGuan's finding was supported by substantial evidence and that it contains no reversible error, Williams' motion for judgment on the pleadings is denied and the Commissioner's motion is granted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 30, 2012
       Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                      Chief Judge
                              United States District Court